# BOUTON v. SAMUEL G. PIPPIN et al., Appellants.

### Division One, December 21, 1905.

1. **PRACTICE: Ejectment: Equitable Defense.** The filing of an answer in a law case setting up equitable matter *in pais*, entitling defendants to affirmative equitable relief and praying for such relief, changes the case from one at law to one in equity.

2. **APPEAL: Part of Evidence.** Where evidence indispensable to the whole controversy is omitted from the bill of exceptions, for instance, where the bill sets out all of respondent's evidence and then adds that appellants "then introduced evidence tending to prove the issue made in their answer," the Supreme Court cannot review the action of the trial court on the merits.

3. **EQUITY: Jury.** In an equity case, the chancellor need not call a jury to his assistance. And if one is called, its office is not that of a trier of fact as the term is used in law cases, but is advisory only. The chancellor may adopt its findings or not as he chooses.

4. ———: ———: **Instructions.** And as the appellate court determines the case on appeal on the evidence and equities arising therefrom, regardless of the jury's findings, the fact that the chancellor gave instructions to the jury, whether correct or erroneous, is not for consideration on appeal.

5. **EJECTMENT: Wife as Defendant.** The wife of the husband in possession is not a necessary defendant in ejectment.

6. ———: ———: **Homestead.** Where plaintiff claims title under a foreclosure sale of a deed of trust made by the husband prior to the enactment of the Homestead Statute of 1895, his wife cannot defeat plaintiff's ejectment by a showing that the land was their homestead and that she did not sign the trust deed, for under the law then in force the husband alone could mortgage or otherwise convey the homestead without the wife joining, unless she had filed her homestead claim, etc.

7. ———: ———: **Dower.** The wife cannot in an ejectment against her and her husband have the court determine whether or not she has an inchoate right of dower in the land, on the ground that she did not sign the deed of trust under which plaintiff claims. But the case should be dismissed as to her, as an unnecessary party, so that her right to assert dower may be preserved, if it should ever become consummate.

8.  ———: ———: ———: Correction on Appeal. Where the wife was improperly joined as a defendant in ejectment, and asked the trial court to decree that she had inchoate dower in the land sold, which motion was overruled, the Supreme Court on her appeal will not grant her motion, for the determination of her dower right is no part of the ejectment, but it will correct the decree, if otherwise proper, by striking her name from the record as a party.

Appeal from Hickory Circuit Court.—*Hon. Argus Cox*, Judge.

MODIFIED AND AFFIRMED.

*Rechow & Pufahl* for appellants.

(1) The court should have given the instructions asked by defendants. They contained correct principles of law. The instructions asked by defendants and refused by the court covered the issues presented in the answer of defendants, while those given by the court only presented the same in part. (2) The court should have determined the rights of Mrs. Margaret J. Pippin. A court of equity will do, full and complete justice. Butler v. Lawson, 72 Mo. 246; Carby v. Bean, 44 Mo. 379; Real Estate & Savings Inst. v. Collonious, 63 Mo. 290; Woodward v. Mastin, 106 Mo. 362; Nelson v. Betts, 21 Mo. App. 220; Clem v. Ins. Co., 29 Mo. App. 666; Jordan v. Harman & Platt, 56 Mo. App. 197. (3) A deed may be reformed and set aside as to one party when it is valid as to others. Mays v. Pryce, 95 Mo. 603. A court of equity has power to set aside a conveyance obtained by fraud and to protect the right of homestead and dower. Devorse v. Snider, 60 Mo. 235.

*J. H. Childers* for respondent.

The only interest Margaret J. Pippin had in the land was an inchoate dower right, which might ripen into a vested right or a chose action, or might not, depending upon whether she survived her husband. R. S. 1899, sec. 2933; Tiedeman on Real Property, sec. 115.

LAMM, J.—Two of the appellants, William C. and Margaret J. Pippin, are husband and wife, and, as such, on the 25th day of November, 1890, to secure a promissory note, executed a deed of trust in the nature of a mortgage to one Sidway, trustee, conveying certain real estate in Hickory county, *inter alia*, eighty acres, to-wit, the east half of the northeast quarter of section 33, township 37, and range 20, the homestead of the said two Pippins—the legal title of all the real estate involved being in the husband. The secured note having been extended for a term and thereafter falling due, the deed of trust was foreclosed by a "substituted trustee" — one Hartman. The purchaser at such sale, plaintiff, received a trustee's deed, and brings this action in ejectment, in conventional form, to recover possession of the land covered by the trust and trustee's deeds. Why Samuel G. Pippin was made a party defendant is undisclosed.

Said Pippins interposed an answer—a general denial with certain affirmative matter—and thereby, among other things, in substance alleged that the said eighty acres were Wm. C. and Margaret J. Pippin's homestead; that Margaret J. refused to convey or mortgage the same; that she could neither read nor write; that neither the husband nor the wife knew the said homestead was covered by the deed of trust at its execution; that it was not included therein by their consent, and that the said deed of trust was not their act and deed, etc. These allegations were supplemented by others suggesting fraud or mistake, and followed by a prayer for specific affirmative relief that the deed of trust be reformed by excluding the homestead, etc., as well as for genreal relief.

Without objection, a jury was impaneled and certain formulated issues of fact submitted, whereby the jury was asked to decide (1) whether the husband understood the homestead was included in the trust deed; (2) whether Childers (what relation he bears to the

controversy may only be guessed) understood the homestead was included; (3) and whether Hartman (what relation he bore to the controversy may only be guessed) understood the homestead was included at the date of the execution of the deed of trust. The jury having answered each and every one of these questions, yes, the court adopted its findings and rendered judgment for plaintiff. However, before so adopting the answers of the jury, Mrs. Pippin interposed a motion asking the chancellor to make a finding as to (1) whether she executed the deed of trust with knowledge that the homestead was included therein, and (2) as to whether she intended to join in any conveyance including the same, and (3) to ascertain and determine her rights without driving her to another action. This motion was overruled and "defendant then and there duly excepted at the time."

The defendants filed a joint motion for a new trial, which being also overruled, they took steps to perfect an appeal, incorporating into the record a bill of exceptions showing that the plaintiff introduced a complete chain of title from the Government to the husband; the deed of trust, aforesaid; the appointment of Hartman as substituted trustee; the trustee's deed executed by Hartman to plaintiff; and proved, *aliunde*, possession in defendants, damages, rents and profits.

The bill of exceptions disposes of the other evidence laconically, thus: "The defendants then introduced evidence tending to prove the issue made in their amended answer. Plaintiff then offered evidence in rebuttal of the same."

The bill of exceptions, moreover, shows that instructions were given for plaintiff and certain instructions refused for defendants, and that exceptions were taken and preserved.

On such record, where evidence indispensable to the just determination of the whole controversy is omitted, it would not only be impossible, but contrary to all

precedent, for this court, however amiably disposed, to review the action of the learned trial court on the merits and correct errors, if any be found to exist. [Stern v. Foltz, 152 Mo. l. c. 560.]

Furthermore, the filing of an answer in a law case setting up equitable matter *in pais,* entitling the defendants to affirmative equitable relief and praying for such relief, under our form of practice, changes the case from one in law to one in equity. [Shaffer v. Detie, 191 Mo. 377, and cases cited.] And in equity cases, for reasons manifest, all the evidence should be brought up. [State ex rel. v. Jarrott, 183 Mo. 204; see Rule 7, of this court.] Inasmuch as these things are true, the merits are not legitimately here. It is true there is an exception to the general rule, viz., where the matter complained of, and sought to have reviewed, goes to the jurisdiction of the court, *nisi,* or to the right of such court to try the case at all, an equity case may be brought here without incorporating the evidence on matters not pertaining to the immediate purposes and object of the appeal and not essential to the determination thereof. [State ex rel. v. Gibson, 184 Mo. 490; State ex rel. v. Gibson, 187 Mo. l. c. 547.] But the case in hand does not fall within the exception.

However, the strict rule may be waived; because not only does respondent not invoke it, but the assignments of errors are in small compass and may be speedily disposed of, *ex gratia.* Those assignments are as follows:

"(1) The court erred in giving the instructions on the part of plaintiff over defendant's objection, and in refusing the instructions asked by the defendant.

"(2) The court erred in overruling the motion of defendant Margaret J. Pippin, to make a full and complete determination of the whole case, and especially in failing to determine her rights.

"(3) The court erred in adopting the verdict of the jury."

The first and third assignments of error may be considered together.

Assuming, as said, that the case was changed from law to equity, it is an unbending rule that the chancellor need not call a jury to his assistance. [Ely v. Coontz, 167 Mo. l. c. 376.] If one be called, its office is not that of a trier of facts in the sense the term is used in a law case, but is advisory only. [Robinson v. Dryden, 118 Mo. l. c. 539; Hall v. Harris, 145 Mo. 614; Shaffer v. Detie, supra.] When the findings of a jury are made, the chancellor may adopt them or not as he chooses. [Lewis v. Rhodes, 150 Mo. l. c. 501.] And whether he does the one or the other, is interlocutory and not a definite or substantial step in a legal sense. If he do adopt the advice of the jury, nevertheless the decree must stand or fall here on the evidence and on the equities arising therefrom, regardless of such advice—he being the ultimate trier of facts below and the duty of this court being to hear the case anew, with proper deference to him on appeal. [Lewis v. Rhodes, supra; Courtney v. Blackwell, 150 Mo. 245.]

The mere form, then, of the chancellor's advice to the jury in the form of instructions, at least in the absence of material evidence, as here, is in the air and need not be considered; because the chancellor's giving bad advice to the jury and it, in turn, giving back bad advice to the chancellor (a not unnatural result since one good turn deserves another), is at best but a Roland for an Oliver, raises a mere moot question in an equity case, and, like estoppel against estoppel, setteth the matter at large—making not a whit toward the end in view —the real issue and heart of the matter, which is: Was the case rightly decided—is the decree equitable? which questions alone concern us in equity.

For a court of conscience to stick in the mere bark and seek not the heart of the matter, would be to amuse itself with the shell and miss the kernel, to tighten the spigot and spend at the bunghole. Granting bad advice

from a jury, or otherwise (a not infrequent incident), yet the decree may nevertheless administer nice and excellent equity, taking on no more effect from such advice than that produced by the unique appetite of the lean kine on the Nile in Pharaoh's dream (q.v.). And how can we say whether or not the decree was right, without the testimony before us?

Even in a law case, where instructions must be judged of in the light of all the testimony, the absence of that will cast appellant. [Brand v. Cannon, 118 Mo. l. c. 597.]

The first and third assignments of error, therefore, will be disallowed.

A more serious question is presented in the second assignment of error. The record before us shows that the court refused to make a finding in regard to the rights of Mrs. Pippin, if any, arising from the allegations of the answer, and the present assignment strikes at such refusal. Did the chancellor err? We think not. Because:

In the first place, Mrs. Pippin was not a necessary or a proper party to this suit. The suit went to the right of possession and that right touched the husband alone or his tenant. The wife's possession was the husband's and he, and not she, was the necessary party. [R. S. 1899, sec. 3056.]

If Pippin had sustained his equitable defense, and had thereby got the trust deed reformed by eliminating the homestead, a different question would be sprung, but he failed in that behalf.

In the second place, the deed of trust was executed by him at a time when our present statute, forbidding the mortgage or other conveyance of a homestead, except by the joint act of the wife, was not in existence. That law was passed in 1895. [Laws 1895, p. 185.] Under the homestead law existing at the date of the execution of the deed of trust in question, there was only one limitation put upon the husband's power to mort-

gage or otherwise convey the homestead standing in his name, and that was in case his wife had theretofore made, acknowledged, filed and recorded her homestead claim. [R. S. 1889, sec. 5435; Greer v. Major, 114 Mo. 145; Gladney v. Sydnor, 172 Mo. l. c. 325.]

In the third place, a sale made under a deed of trust of the date of this one, executed on the homestead by the husband alone (and that is as favorable an hypothesis as appellants are entitled to) would not affect the wife's inchoate right of dower. But, on the other hand, the wife's inchoate right of dower, outstanding, self-evidently does not defeat ejectment against the husband. [Bank v. Linzee, 166 Mo. l. c. 501.]

It necessarily follows, that if the court had made a finding in favor of Mrs. Pippin, finding the allegations of the answer, as to her, true and had reformed the deed of trust accordingly, yet all this would not have interposed a defense in ejectment, neither in her own behalf or her husband's, under this record. It may be that on his death such finding and decree would have furnished the substratum for a claim on her behalf for dower and homestead in the land, but to inject the litigation of that question into the issues here is to make the parties litigant fight out and be burdened with the cost of an irrelevant issue, an issue which is a parasite —a mistletoe, to borrow a trope, grafted upon the main tree-trunk of the litigation—in nowise decisive of the case.

But the chancellor, having refused to make a finding on the issues presented by Mrs. Pippin, should have relieved the situation from all embarrassment by striking her name from the record as a party, so that she, as the particular one of the three Pippins interested, may embark on the current or stream of any litigation she elects, and swim or sink, speaking figuratively, with no claim of res judicata apparently staring her in the face on a record whereby her equitable rights may be claimed to have been settled; because, if the deed of

trust, as alleged, be a covinous contrivance and a fraud upon her, the question ought not to be foreclosed on a record where the evidence is eliminated, as it is here. The case of Mays v. Pryce, 95 Mo. 603, chiefly relied upon by appellants, was a case where all the evidence was brought up and the wife's land was involved. Consequently, it does not settle the questions confronting us.

Having failed to protect her rights by striking her name from the record, we, ourselves, may do so on reason as well as precedent. [Orr v. Rode, 101 Mo. l. c. 400; Evans v. Kunze, 128 Mo. l. c. 680; Bensieck v. Cook, 110 Mo. l. c. 183; State ex rel. v. Tate, 109 Mo. l. c. 271.] We will therefore do here what the learned chancellor below might and ought to have done, viz., correct this judgment in accordance with its true legal effect, by striking from the record the name of Margaret J. Pippin, leaving her equities open.

And, as so modified, the judgment will be affirmed. All concur, except *Brace, P. J.,* absent.